**OBORN, Plaintiff-Appellee, v. TAYLOR, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20829. Decided November 1, 1948.

Stanley & Smoyer, Cleveland, for plaintiff-appellee.
Ralph L. Ammerman, T. V. Moore, Cleveland, for defendant-appellant.

## OPINION

By SKEEL, J:

This action comes to this court on questions of law and fact from a judgment of the court of common pleas for the plaintiff upon her petition for dissolution of partnership, accounting, judgment for such amount as is found to be due her, and other equitable relief.

The plaintiff and defendant entered into a partnership agreement on May 15, 1937, for the purpose of establishing and operating a beauty shop at 3461 Fairmount Boulevard in the City of Cleveland Heights. The parties also about five or six years after the partnership was begun, extended their partnership endeavors to include the poultry business in the sale of dairy products.

It is the claim of the plaintiff that at the time the beauty shop was opened up they each paid into the partnership account four hundred dollars. That the defendant, Taylor, advanced other credits to the partnership for equipment and operating expenses at the beginning of the business, the plaintiff's share of which it is claimed has been returned to the defendant in full. That in 1944 or 1945 when the partners embarked in the poultry and dairy business $1070.00 was expended for cows and chickens of which amount $170.00 was taken out of the partnership funds, the plaintiff advancing $900.00 so that there is due her $450.00 from the defendant.

The plaintiff further claims that she loaned the defendant $400.00 in October, 1945, which has not been repaid. The plaintiff admits that prior to January 1946, she received from the partnership $1753.00 in which the defendant did not participate. It is further alleged that on February 8, 1940, the defendant executed to the plaintiff an option to purchase his one-half interest in the partnership business for $3000.00, and that she, on July 8, 1946, gave notice of her intention to exercise such option and tendered into court $3000.00 for that purpose.

It is further claimed by the plaintiff that the defendant has received $2420.00 from sales of poultry products and $113.76 for dairy products on which she has not been paid her share and that there is due her by reason thereof $1210.15 and $56.88 respectively as her part of such income and that the defendant received $1017.12 of income from partnership funds in which she did not participate, whereby there is due her $508.56.

It is further claimed that there is due her for operation of the shop under the receivership $1236.00. It is stipulated between the parties that the value of the chickens and cattle remaining in the possession of defendant was $1500.00 of which $750.00 is plaintiff's share.

The defendant's answer and amended cross-petition alleges that he expended various sums of money for the operation of the beauty parlor, totalling $2462.88 of which $300.00 was returned, leaving a balance due him of $2162.88 and that the plaintiff withdrew $1753.00 in profits over a certain period of time during which defendant did not draw any money whatever. He further alleges that the plaintiff drew a total of $14,616.35 during the existence of the partnership, by reason of which there is due defendant $9298.16 which amount includes all of the partnership liabilities to him. He admits he has retained the chickens and cattle of the value of $1500.00 of which the plaintiff is entitled to a credit of $750.00, leaving a balance due him of $8548.16 which he asks judgment, together with one-half share of profits under the receivership, including the sale of the assets as of the day of the commencement of the action.

The affirmative allegations of the amended cross-petition which are in conflict with the plaintiff's allegations are denied by reply.

The evidence presented in this court consists of the transcript of the proceedings in the common pleas court including all of the exhibits and the further testimony of witnesses and exhibits offered before a master commissioner appointed by this court.

The evidence is not in conflict as to the formation of the partnership and that each was to share equally in the profits or losses. There is also no controversy as to the value of the chickens and cattle on hand and in the possession of the defendant at the time of the appointment of the receiver for the beauty shop at the beginning of the action, it being stipulated that such value was $1500.00 and that plaintiff is entitled to one-half of said amount, or $750.00. The plaintiff also admits receiving $1753.00 out of income in which defendant did not participate and there is, therefore due him $876.50. There is likewise no dispute but that the plaintiff rendered services for the receiver which were not paid for and were found by the court below to be of the value of $1236.00 which amount we likewise find to be the reasonable value of such services.

The principal contention of the defendant as to the amount due him out of the partnership assets or from the plaintiff, as alleged in his amended cross-petition, is based upon the report of the auditor which in substance shows that there is a discrepancy between the amount of the receipts as recorded in the journal from income shown by a record called "Service Record" or "Commission Book" which purported to record the amount received for the daily work of each beauty operator and upon which record such beauty operator was paid her commission.

An examination of these two books discloses that beginning some time in 1939 the amount reported in the journal was less than was shown by the commission book. These differences were at first for small amounts. The plaintiff's explanation of these differences up to February, 1940, was that during that period the partnership offered a special inducement to customers who would buy a book entitling such customers to six hair treatments. Under this special offer the customer would be charged for five treatments while the beauty operator would be paid for her work in giving each treatment so that a difference in actual receipts and what the commission book would show would result.

Beginning in February, 1940, however, there is no doubt but that the books were not accurately kept. The amount of income as shown by the commission books was not correctly recorded in the journal. For the month of February, 1940, the journal shows $86.00 less than was actually received from the work of the beauty operators as shown by the commission book. From that time on, until May 1, 1946, the practice was continued of incorrectly recording the receipts as shown by the commission book in the journal, that is, the journal evidenced a smaller amount than the commission book, for

.almost every business day. There were many months, for example the month of September, 1942, when the amount of the receipts were incorrectly recorded on 24 days during ·the month, the total amount withheld being $394.00 and on two days, September 4th and 5th, $45.00 was withheld from ·each day. The total receipts for that month, as shown · by the commission book, was $1109.15. In other words, about ·one-third of the income was not shown by the journal.

One commission book is missing, that is for the period ·from January 3, 1943 to April 22, 1945, but the total amount ·withheld from the journal from 1940 to 1946, for which the ·data is available was about $9000.00.

It is the claim of defendant that he was entirely ignorant ·of this practice and that the plaintiff withdrew for her own purpose the money not recorded in the journal and that he ·is therefore entitled to have the total amount withheld considered in the accounting as an asset of the partnership and that such amount charged as received by the plaintiff.

It is the claim of plaintiff that the practice of withholding a part of the income of the partnership from the journal was ·dictated by defendant so that he would not have to report his ·total receipts from the partnership for income tax purposes.

The parties are in complete disagreement as to who kept the books. The handwriting for the most part was that of plaintiff, but defendant made the headings and helped in ·other ways in the book work of the partnership. At one point he testified:

"I never kept the books after March, 1938. I helped her foot them and made the headings. I made pretty near all ·the recaps."

There is no dispute in the evidence, however, that on Feb. 12, 1940, the plaintiff was taken to a hospital for a serious ·operation and was not released until February 28, 1940 and ·did not return to work for some time thereafter. This was the month when the practice of withholding a part of the ·income from the journal was started. The defendant made most of the entries during this period. Plaintiff testified that ·defendant brought the books to the hospital and insisted ·that she make some of the entries so that if any trouble developed with the taxing authorities she would have to take ·the blame.

There was one other period when the defendant admittedly ·had the books completely under his control and that was for

the months of November and December, 1945. During this period $295.00 of income was not recorded in the journal.

The evidence of the parties also establishes that the books were kept either at the place of business of the partnership or at the place of residence of defendant in Chesterland, Ohio.

The plaintiff during most of the time was living in defendant's home in Chesterland until she was asked to leave about June 8, 1946. The defendant's treatment of plaintiff on many occasions was very severe and on one occasion he struck her with his fist and ordered her out of his automobile.

It seems incredible to this court that defendant who was an experienced business man who handled most of the business transactions of the partnership and whose attitude toward his partner on many occasions was none too friendly, and who in part at least helped with the bookkeeping, (it being admitted that at least on two occasions he took complete charge of the books and that during the first time this occurred the practice of incorrectly recording the receipts in the journal began and on the other occasion such practice continued with the same regularity) that under these circumstances he knew nothing about the inaccurate recording of the income in the journal. We find that defendant was fully advised of and directed such practice and participated therein. This conclusion is inescapable when, in addition to the foregoing facts the evidence shows that for a great part of the time the amount of the daily receipts which were not recorded equalled from 1/4 to 1/3 of the income of the partnership.

We conclude, therefore, that defendant directed the manner in which the books were kept and that the books not correctly recording the true financial transactions of the partnership, defendant's claim that he is entitled to share in the funds which were not recorded in the journal must be denied.

The other disputed claims of plaintiff have to do with the alleged loan to defendant of $400.00, one-half of the egg sales, amounting to $1210.15, one-half of the milk sales amounting to $56.88, and $508.56 claimed to be one-half of an amount withdrawn as income by defendant and not participated in by plaintiff.

Having come to the conclusion that little of any credence can be accorded the evidence of the defendant with regard to the practice of inaccurate bookkeeping, it would indeed be illogical to take a contrary view of such evidence as to the other issues concerning the financial problems of the partnership. We are therefore compelled to find that the plaintiff has maintained the burden of proof on these issues and find therefore that the plaintiff is entitled to the following credits:

| | |
|---|---|
| Loan to defendant | 400.00 |
| One-half of egg sales | 1210.15 |
| One-half of milk sales | 56.88 |
| one-half of income of partnership retained by defendant in which the plaintiff did not participate | 508.56 |

There is no controversy in the evidence but that plaintiff is entitled to a credit of $750.00 being one-half of the value of the chickens and cattle. And that she is also entitled to a credit of $1236.00 for her services after the receiver was appointed. It is also true that there is no dispute but that defendant is entitled to $876.50, being one-half of an amount of income retained by plaintiff in which defendant did not participate.

We come now to the question of plaintiff's right to exercise the privilege to purchase defendant's one-half interest in the partnership business by reason of the option signed by defendant on Feb. 8, 1940 and which option plaintiff accepted by letter to defendant on July 12, 1946.

The evidence is undisputed as to the execution of the options. The plaintiff signed the option running to the defendant about four days before she entered a hospital. At the same time the defendant prepared and executed a like option to plaintiff as a part of the same transaction. The claim, therefore, that the option under which the plaintiff now claims the right to purchase defendant's interest in the partnership was given as a temporary expedient, cannot be sustained. The option signed and delivered by defendant could have nothing to do with the plaintiff going to the hospital and it is that option that is here under consideration.

The promise in the one option was the consideration for the promise in the other, so that both were based upon good consideration and being based upon consideration could not be withdrawn without mutual consent. The question then is whether a delay of six years without more is sufficient evidence from which it could be said as a matter of law that consent to the withdrawal of said options will be presumed. We think not. An option of necessity must be intended to cover some period in the future. If the time within which it is to be exercised to be binding on the other party is not set forth therein, then a reasonable time must be presumed. The defendant in his first cross-petition alleged his intention to exercise the option he received from plaintiff, which attempt to exercise such option was made long after plaintiff's letter of July 12 in which she exercised her right under the option given to her by defendant. It is true that defendant abandoned this claim in his amended

cross-petition and testified he destroyed his option and assumed that both options were at an end after plaintiff returned from the hospital but the fact of pleading a right thereunder would be some evidence as to whether or not a sufficient time had elapsed from which it could be said as a matter of law the parties had mutually agreed to a withdrawal of the options. We find that such options had not been withdrawn as a matter of law by the passing of time and the parties not having themselves mutually agreed to bring them to an end, the plaintiff's notice constituted an acceptance of defendant's offer to sell his interest in the partnership and gave her a lawful right to the defendant's interest in the partnership business.

A decree may, therefore, be entered finding that there is due plaintiff from defendant $400.00 on a loan and $750.00 for her interest in the chickens and cattle; that she is entitled to receive out of the assets of the partnership $899.09 as of the date of the appointment of the receiver and $1236.00 as compensation for her services which was not paid during the first part of the receivership. That as against these credits there shall be charged against her $3000.00 for the purchase price of defendant's one-half interest in the partnership business, leaving $375.59 the partnership assets and the balance of the assets including profits realized under the receivership to be divided equally after the costs of this action have been paid. Order See Journal. Exceptions.

HURD, PJ, MORGAN, J, concur.